**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **OnX USA LLC, etc.,** | ) | **CASE NO. 1:11CV2523** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **LOUIS SCIACCHETANO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

     This matter comes before the Court upon the Renewed Motion (ECF DKT #54) of

Defendants, Louis Sciacchetano and Sirius Computer Solutions, Inc., to Transfer Venue.  For

the following reasons, the Motion is denied.

## I. FACTUAL BACKGROUND

     Defendant Sciacchetano is, and has been at all relevant times, a citizen and resident of

the State of New Jersey.  OnX is a limited liability company organized and existing under the

laws of the State of Delaware, with its principal place of business in Mayfield Heights, Ohio.

OnX was formerly known as Agilysys Technology Solutions Group, LLC ("TSG"), and was a

subsidiary of Agilysys, Inc.  On August 1, 2011, OnX officially changed its name from TSG

to OnX USA, LLC, and is the successor of the TSG business unit of Agilysys and all of its rights pertinent thereto.[1]  Defendant Sirius Computer Solutions, Inc. ("Sirius") is a Texas corporation, with its principal place of business in San Antonio, Texas.  Sirius maintains an office in Ohio, and regularly transacts business in Ohio.

Sciacchetano was hired by OnX in 2004 as a Vice President of Sales.  At all times during his employment, Sciacchetano performed his job duties mainly from New Jersey and traveled to OnX's headquarters in Solon, Ohio approximately once per quarter in connection with his position.  He reported to Anthony Mellina, a Senior Vice-President and General Manager, who worked in the Edison, New Jersey office.  While working in New Jersey, Sciacchetano dealt with many Ohio-based OnX employees, including his inside sales team, business operations team, legal team, accounting team and his own assistant, whom he personally supervised on a regular basis.  When he contacted these team members, Sciacchetano called phones located in Ohio.  Sciacchetano directed customer invoices, payments and pricing quotes to Ohio; and his pay, benefits, expense reimbursements and equipment requests (computer, cell phone, etc.) were all handled and processed in Ohio. Finally, Sciacchetano utilized OnX's Ohio databases to send and obtain information to perform his job.

Sciacchetano was presented with a Non-Disclosure Policy and Agreement in 2004, which he signed.  He also signed an Employment Agreement with Agilysys in 2006. Agilysys offered another Employment Agreement to Sciacchetano in September of 2010.  He

---

[1]      Plaintiff will be referred to as "OnX" for events occurring both before and after Agilysys Technology Solutions Group, LLC became OnX.

attempted to negotiate the terms of the 2010 Agreement; and the parties dispute if, or when, the 2010 Agreement was signed.  In August of 2011, OnX terminated Sciacchetano. Sciacchetano alleges that he was unwilling to agree to any post-employment non-solicitation covenants; so, he signed a Separation Agreement only after crossing out the covenant designated as Section 15.  Sciacchetano accepted employment with Sirius on or about August 23, 2011.

OnX filed suit against Sciacchetano and Sirius in Cuyahoga County Common Pleas Court.  Defendants removed the action on November 21, 2011.  OnX filed its First Amended Complaint, with leave of Court, on June 15, 2012, alleging Breach of Contract; Tortious Interference with Contracts; Misappropriation/Conversion of Trade Secrets; Accounting; Unjust Enrichment; Unfair Competition; Civil Conspiracy; and Fraud under 18 U.S.C. § 1030.  OnX alleges that Sciacchetano violated his obligations under his employment agreements by soliciting OnX employees, customers and suppliers on behalf of Sirius.  OnX further alleges that Defendants intercepted and directed emails from OnX to Sciacchetano's personal email account.

On August 2, 2012, Sciacchetano and Sirius filed their Renewed Motion to Transfer Venue, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of New Jersey.  The matter has been fully briefed.

## II. LAW AND ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), this Court has broad discretionary powers to transfer civil actions:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have

been brought."

When considering whether a change of venue is warranted, the district court must weigh case-specific factors, public-interest factors and private concerns.  *Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531 (6th Cir.2002).  "Among the specific private interests a court may consider are plaintiff's choice of forum, the location of books and records and, ***, the convenience of witnesses.  It has been said that plaintiff's choice of forum is entitled to 'great weight.'" *Bacik v. Peek*, 888 F.Supp. 1405, 1414 (N.D.Ohio 1993) (quoting *Gdovin v. Catawba Rental Co.*, 596 F.Supp. 1325, 1327 (N.D.Ohio 1984)).

In order for the Court to analyze whether to transfer this case to another venue pursuant to 28 U.S.C. § 1404(a), the Court must have personal jurisdiction over the Defendants.  Sirius never filed a challenge to personal jurisdiction; and, on December 19, 2012, the Court determined that its exercise of personal jurisdiction over Sciacchetano is proper.  (ECF DKT #76).

**Plaintiff's choice of forum**

Plaintiff's choice of forum is not determinative, but is "instead merely one of the relevant factors in the § 1404(a) analysis." *Young v. Kiebler Recreation*, No. 1:09CV1810, 2010 WL 395224, at *5 (N.D.Ohio Jan. 26, 2010) (citing *Int'l Union, U.A.W. v. Aluminum Co. of America*, 875 F.Supp. 430, 433 (N.D.Ohio 1995)).  However, it becomes the duty of the District Court to "balance inconveniences and to determine upon which litigant the greater hardship would rest," if change of venue is granted.  *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951).  That determination is "subject to the rule that unless the balance is strongly in favor of the defendant the plaintiff's choice of forum should rarely be disturbed."  *Id*., citing

-4-

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

Defendants assert that OnX's choice of forum should be given little weight because this action was removed to federal court, and they cite to *Improvita Health Prods., Inc. v. F & F Foods, Inc.*, No. 1:07CV1097 (N.D.Ohio May 31, 2007) (Boyko, Judge).  Defendants have accurately attributed that principle to the *Improvita* decision; but failed to note the additional factors of a forum-selection clause and a major third-party out-of-state witness, which tipped the scales in favor of transfer.  Here, by contrast, there is no forum-selection clause in the employment agreements.  Furthermore, the record is clear that OnX affirmatively chose to file an Ohio state court complaint, based upon claims OnX alleges arise out of activities Defendants conducted within the state.  OnX's General Counsel, Richard Rudolph, recognized the possibility of removal, yet stated in that regard: " I was aware OnX's $10 Million plus demand and Defendants' status as non-Ohio residents created diversity jurisdiction in the U.S. District Court for the Northern District of Ohio.  I did not care whether the case was litigated in Ohio state court or Ohio federal court, so long as it was litigated in Ohio."  (Rudolph Supplemental Declaration, ECF DKT #61-2).  Defendants strongly dispute that the actions and events giving rise to OnX's claims occurred within Ohio; but, in the Court's view, Defendants have not swayed the balance of inconveniences in favor of New Jersey.  OnX's choice of forum will not be disturbed.

**<u>Location of relevant records and documents</u>**

The Court finds that the location of relevant records and documents is almost a non-factor in its venue analysis.  OnX maintains corporate, employment, and customer records in Ohio.  Sirius has its principal place of business in Texas, and that is most likely where

-5-

physical documentary evidence would be found.  Sciacchetano's personal computer data and paperwork should be in New Jersey.  Yet, in this age of modern technology – photocopying, scanning; faxing; and emailing – the transmission of relevant records from one state to another is greatly simplified.  Neither New Jersey nor Texas is more favorable a venue than Ohio.

**Convenience of third-party witnesses**

"It has also been said that 'the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C.A. § 1404(a) is the convenience of witnesses'" *Bacik*, 888 F.Supp. at 1414 (quoting 15 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3851 at 415 (1986)).  Both sides present the Court with a listing of "material" third-party witnesses which each believes justifies their preferred venue.  At the same time, both Plaintiff and Defendants acknowledge that: "Convenience to witnesses is more than just a numbers game; a court should not merely tally witnesses but should instead evaluate the significance of their expected testimony."  *Siegfried v. Takeda Pharm. N. Am., Inc.*, No. 1:10CV2713 (N.D.Ohio Apr. 14, 2011); *Midwest Motor Supply Co. v. Kimball*, 761 F.Supp. 1316, 1319 (S.D.Ohio 1991).  It is obvious that there are significant witnesses located in both Ohio and New Jersey.  However, Defendants have not convinced the Court that New Jersey is more convenient than Ohio for individuals offering relevant testimony in this dispute.

**Public interest**

Upon consideration of this factor, the Court finds that the arguments from both parties are in equipoise.  New Jersey would have an interest in the conduct of its citizen,

Sciacchetano; and Texas would likewise regulate its corporate citizens, such as Sirius. Certainly, Ohio has an interest in the business and contractual activities of OnX, that maintains its principal place of business in the City of Mayfield Heights.  OnX points out, moreover, that Sciacchetano's 2006 Employment Agreement and his Separation Agreement both contain an Ohio choice of law provision.  Sciacchetano, for his part, contests which contract controls, and disputes certain provisions of the Agreements.   The Court believes a New Jersey court would be quite capable of applying Ohio contract law; but "[t]here is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."  *Gulf Oil*, 330 U.S. at 509.  Thus, the public interest factor does not persuade the Court to transfer venue.

### III. CONCLUSION

For all these reasons, and after weighing the case-specific factors, public-interest factors and private concerns, the Court finds, pursuant to 28 U.S.C. § 1404(a), for the convenience of parties and witnesses, and in the interest of justice, that venue is appropriate in the United States District Court for the Northern District of Ohio.  Defendants' Renewed Motion (ECF DKT #54) to Transfer Venue is denied.

**IT IS SO ORDERED.**

**DATE: __3/4/13_____**


**s/Christopher A. Boyko_____**
**CHRISTOPHER A. BOYKO**
**United States District Judge**